UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

_____

IN RE:
MARYBETH BAUER WILLIAMS,                    Chapter 7
                    DEBTOR.                 Case No. 14-10559-WCH

_____

## MEMORANDUM OF DECISION

## I. <u>INTRODUCTION</u>

The matter before the Court is the "Objection of Donald R. Lassman, Chapter 7 Trustee, to Debtor's Claim of Exemption" (the "Objection") filed by Donald R. Lassman (the "Trustee"), the Chapter 7 trustee, and the "Debtor's Opposition and Response to Objection of Donald R. Lassman, Chapter 7 Trustee, to Debtor's Claim of Exemption" filed by Marybeth Bauer Williams (the "Debtor").  Through the Objection, the Trustee asserts that the sale proceeds of the Debtor's former residence are no longer entitled to protection under the Massachusetts Homestead Statute[1] because they were not reinvested in a new home within one year of the sale.  For the reasons set forth below, I will continue the Objection generally.

## II. <u>BACKGROUND</u>

The facts are not in dispute.  The Debtor previously owned certain real property located at 49 Shubael Gorham Road in Centerville, Massachusetts (the "Property") with her spouse, Mark J. Williams ("Mark").  The Debtor and Mark separated on January 5, 2013, and a divorce proceeding is now pending before the Barnstable Probate and Family Court (the "Probate Court").  Although a final settlement agreement has not been executed and the Probate Court has

---

[1] Mass. Gen. Laws ch. 188, § 1 *et seq.*

1

not entered judgment, the Debtor and Mark agreed to sell the Property pursuant to a tentative property settlement.  On March 29, 2013, they sold the Property, realizing net proceeds of approximately $63,280.98.  The Debtor and Mark equally divided these proceeds, and the Debtor deposited approximately $31,640.49 in a segregated checking account at Cape Cod Five Cents Savings Bank ("Cape Cod 5").

On February 13, 2014, the Debtor filed a voluntary Chapter 7 petition.  On "Schedule B – Personal Property" ("Schedule B"), she listed a checking account at Cape Cod 5 with a balance of $29,000.00 and identified the funds as being the "proceeds from the sale of former marital residence" (the "Proceeds Share").[2]  On "Schedule C – Property Claimed as Exempt" ("Schedule C"), the Debtor claimed an exemption pursuant to Mass. Gen. Laws ch. 188, § 4 in the full amount of the Proceeds Share (the "Exemption").

The Trustee was appointed on February 13, 2014.  The Debtor appeared at the meeting of creditors held pursuant to 11 U.S.C. § 341 (the "Meeting of Creditors") on March 18, 2014.  On April 18, 2014, the Trustee filed the Objection, contending that by virtue of the Debtor's failure to reinvest the Proceeds Share into a new home within one year of the sale, the Proceeds Share was no longer entitled to protection under the Massachusetts Homestead Statute.[3]  The Debtor filed the Opposition on May 29, 2014.  I heard the matter on June 6, 2014, and after oral arguments from both parties,  I took the matter under advisement.

---

[2] Schedule B, Docket No. 1.

[3] *See* Mass. Gen. Laws ch. 188, § 11.

## III. POSITIONS OF THE PARTIES

A. The Trustee

Although the Debtor claimed the Exemption pursuant to Mass. Gen. Laws ch. 188, § 4, the automatic homestead exemption provision, the Trustee contends that section only applies to "actual homesteads."[4]  Instead, he posits that the Debtor actually relies on Mass. Gen. Laws ch. 188, § 11, which applies to the proceeds from the sale of a home.   Nevertheless, the Trustee asserts that Mass. Gen. Laws ch. 188, § 11 no longer forms a valid basis for the Exemption because it only protects the sale proceeds of the homestead for up to one year after the sale if the owner does not acquire a new homestead before then.  Because the Property was sold on March 29, 2013, and the Debtor did not reinvest the Proceeds Share in a new homestead within one year, he argues that the homestead protection afforded to the Proceeds Share expired by operation of Massachusetts law.

While the Trustee concedes that, generally speaking, exemptions are fixed at the time of the bankruptcy filing, he rejects the notion that an exemption cannot be changed by post-petition events.  Because this is an issue of first impression in this district, he relies on several decisions from other jurisdictions holding that any "snapshot rule" with respect to exemptions must be viewed in the context of the entire state law applicable on the filing date.[5]   Thus, the Trustee urges that any exemption is claimed subject to all the limitations contained within the applicable state law.

---

[4] Objection, Docket No. 18 at ¶ 4.  Because "actual homestead" is not a defined term, I presume the Trustee means to suggest that the Mass. Gen. Laws ch. 188, § 4 only applies to physical homes, and not the proceeds derived from the sale of such  homes.

[5] *See Viegelahn v. Frost (In re Frost)*, 744 F.3d 384 (5th Cir. 2014); *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193 (9th Cir. 2012); *Zibman v. Tow (In re Zibman)*, 268 F.3d 298 (5th Cir.2001); *White v. Brown (In re White)*, 389 B.R. 693 (B.A.P. 9th Cir. 2008).

3

To the extent that the Debtor relies on *In re Cunningham*[6] to support the Exemption, the Trustee asserts that the case is wholly distinguishable from the facts at bar. He explains that *In re Cunningham* stands for the proposition that the proceeds from the post-petition sale of the homestead property remain exempt under the prior version of the Massachusetts Homestead Statute.[7] Similarly, the Trustee argues that *In re Weinstein*[8] is distinguishable from the present case because rather than dealing with an exception to the homestead, the right granted by Mass. Gen. Laws ch. 188, § 11 is simply limited in nature.

B. <u>The Debtor</u>

The Debtor asserts that the Objection is without merit because exemptions are determined on the petition date, and, pursuant to 11 U.S.C. § 522(c), are not liable during or after any case for a prepetition debt.[9] She relies on *In re Cunningham*[10] and *In re Gasztold*[11] for the proposition that once property is exempt from the estate, a subsequent change in the property's form will not return it to the estate even if the new form would not have been entitled to an exemption in the first place. Moreover, the Debtor argues that *In re Weinstein* stands for the proposition that the Bankruptcy Code preempts a state's exceptions to its homestead statute.[12] Alternatively, she submits that Mass. Gen. Laws ch. 188, § 6 protects the Exemption during the pendency of the divorce proceedings in the Probate Court.

---

[6] *Pasquina v. Cunningham (In re Cunningham)*, 513 F.3d 318 (1st Cir. 2008).

[7] *Id.* at 323.

[8] *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677 (1st Cir. 1999).

[9] *See* 11 U.S.C. § 522(c).

[10] *In re Cunningham*, 513 F.3d at 324.

[11] *In re Gasztold*, 11-21287, 2011 WL 5075440 (Bankr. D. Conn. Oct. 25, 2011).

[12] *See In re Weinstein*, 164 F.3d at 683.

4

Apart from her other arguments, the Debtor also complains that she has been unfairly prejudiced by the timing of the Objection. She explains that had the Trustee filed the Objection shortly after the petition date, she would have been able to reinvest the Proceeds Share into a new homestead. The Debtor contends she detrimentally relied on the lack of an earlier objection, believing that the Proceeds Share would be forever exempt.[13] In the absence of any other basis for relief, the Debtor asks that I grant her sixty days to reinvest the Share Proceeds pursuant to my powers under 11 U.S.C. § 105(a).

## IV. <u>DISCUSSION</u>

Upon the filing of a bankruptcy petition, a estate is created "consist[ing] of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions."[14]  A debtor may claim that certain interests in property are exempt from the estate, thus withdrawing that "interest . . . from the estate (and hence from the creditors) for the benefit of the debtor."[15] Pursuant to 11 U.S.C. § 522(b)(1), "a Massachusetts debtor may exempt property from the bankruptcy estate under one of two alternative exemptions,"[16] electing "either the federal bankruptcy exemptions set forth in [11 U.S.C.] § 522(d) or the exemptions available under state.

---

[13] Because it is ultimately irrelevant to the outcome of this case, I will simply note that this argument is specious for the following reasons: (1) pursuant to Fed. R. Bankr. P. 4003(b)(1), the deadline for filing objections to a debtor's claim of exemption is thirty days after the meeting of creditors is concluded; (2) the basis for the Trustee's objection to the Exemption did not exist on the petition date; and (3) the Trustee, as a representative of the creditor's interests, was not obligated to warn the Debtor that he intended to challenge the Exemption upon expiration of the one year period.

[14] *Owen v. Owen*, 500 U.S. 305, 308, 111 S. Ct. 1833, 1835, 114 L. Ed. 2d 350 (1991).  *See* 11 U.S.C. § 541(a).

[15] *Owen v. Owen*, 500 U.S. at 308.

[16] *Gordon v. Pappalardo (In re Gordon)*, 487 B.R. 600, 602 (B.A.P. 1st Cir. 2013)

federal non-bankruptcy or local law only."[17]  "Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts."[18]

Notably, 11 U.S.C. § 522(l) provides that exemptions listed on Schedule C are presumptively valid in the absence of an objection.[19]  Therefore, Fed. R. Bankr. P. 4003(c) places the burden to prove that an exemption is not properly claimed on the objecting party.[20]  To the extent that resolution of the present dispute requires interpreting the Massachusetts Homestead Statute, I must remain mindful that the "Massachusetts homestead exemption is to be liberally construed in favor of the declarant"[21] and try to predict how the Massachusetts Supreme Judicial Court would rule.[22]

In 2010, the Massachusetts Legislature enacted a comprehensive revision to the Massachusetts Homestead Statute.  On its face, the purpose of this sweeping amendment was to extend homestead protection to circumstances where it had not applied under the prior law.  This includes, *inter alia*, introducing the concept of an "automatic homestead exemption" in the amount of $125,000 which applies in the absence of a valid declared homestead exemption, expanding homestead rights to include those who "own" real estate through a beneficial interest in a trust, and offering limited protection to the proceeds resulting from a sale or casualty to the

---

[17] *In re Feliciano*, 487 B.R. 47, 50 (Bankr. D. Mass. 2013).

[18] *Owen v. Owen*, 500 U.S. at 308.  *See also* 11 U.S.C. § 522(c) ("[P]roperty exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . .").

[19] 11 U.S.C. § 522(l) ("Unless a party in interest objects, the property claimed as exempt on such list is exempt.").

[20] Fed. R. Bankr. P. 4003(c).  *See Shamban v. Perry (In re Perry)*, 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006).

[21] *In re Genzler*, 426 B.R. 407, 418 (Bankr. D. Mass. 2010); *see Shamban v. Masidlover*, 429 Mass. 50, 53 (1999); *Dwyer v. Cempellin*, 424 Mass. 26, 30 (1996).

[22] *See Garran v. SMS Financial V, LLC (In re Garran)*, 338 F.3d 1, 6 (1st Cir. 2003); *Caron v. Farmington Nat'l Bank (In re Caron)*, 82 F.3d 7, 9 (1st Cir.1996); *Hildebrandt v. Collins (In re Hildebrandt)*, 320 B.R. 40, 44 (B.A.P. 1st Cir. 2005); *In re Desroches*, 314 B.R. 19, 21-22 (Bankr. D. Mass. 2004); *In re Miller*, 113 B.R. 98, 101 (Bankr. D. Mass. 1990).

homestead.[23]    As I recently noted, the consequence of these changes is that "parsing the Massachusetts Homestead Statute now involves a complicated web of defined terms and cross-references."[24]

On Schedule C, the Debtor claimed the Exemption pursuant to Mass. Gen. Laws ch. 188, § 4, which provides in relevant part:

> In the absence of a valid declaration of homestead recorded under this chapter, an estate of homestead to the extent of the automatic homestead exemption shall exist in a home for the benefit of the owner and the owner's family members who occupy or intend to occupy the home as a principal residence.[25]

As previously stated, an "[a]utomatic homestead exemption" is, subject to conditions not germane to this discussion, an exemption in the amount of $125,000.[26]  A "home," is generally defined as one of various residential dwelling structures, while a "principal residence," is "the home where an owner . . . resides or intends to reside as the primary dwelling. . . ."[27]  Finally, an

---

[23] Mass. Gen. Laws ch. 188, § 1, 4, and 11.

[24] *In re Newcomb*, 13-14840-WCH, 2014 WL 3407838, *4 (Bankr. D. Mass. July 10, 2014)

[25] Mass. Gen. Laws ch. 188, § 4.

[26] Mass. Gen. Laws ch. 188, § 1.

[27] *Id.*  Specifically, Mass. Gen. Laws ch. 188, § 1 defines a "home" as

> the aggregate of: (1) any of the following: (i) a single-family dwelling, including accessory structures appurtenant thereto and the land on which it is located; (ii) a 2 to 4-family dwelling, including accessory structures appurtenant thereto and the land on which it is located; (iii) a manufactured home as defined in section 32Q of chapter 140; (iv) a unit in a condominium, as those terms are defined in section 1 of chapter 183A, that is used for residential purposes; or (v) a residential cooperative housing unit established pursuant to chapters 156B, 157B, 180 or otherwise; (2) the sale proceeds as provided in clause (1) of subsection (a) of section 11; and (3) the proceeds of any policy of insurance insuring the home against fire or other casualty loss as provided in clause (2) of said subsection (a) of said section 11.

*Id.*

"owner" is defined as "a natural person who is a sole owner, joint tenant, tenant by the entirety, tenant in common, life estate holder or holder of a beneficial interest in a trust."[28]

The Trustee does not dispute that the Debtor is an "owner," or that the Property contained a "home" that was used as her "principal residence."  The Property, however, was sold prepetition and the Exemption sought applies to the Proceeds Share.  Nevertheless, the definition of "home" also includes "the sale proceeds as provided in clause (1) of subsection (a) of section 11. . . ."[29]  That section provides in relevant part:

> (a) If a home that is subject to an estate of homestead is sold, whether voluntarily or involuntarily . . . then the proceeds received on account of any such sale . . . shall be entitled to the protection of this chapter during the following periods:
>> (1) in the event of a sale, whether voluntary or involuntary . . . *for a period ending on the date on which the person benefited by the homestead either acquires another home the person intends to occupy as a principal residence or 1 year after the date on which the sale . . . occurred, whichever first occurs. . . .*[30]

As is apparent from the emphasized text, the protection afforded to sale proceeds is not absolute, but is expressly limited in duration to at most one year after the date of the sale.  The parties agree that the one year period provided by this section expired on March 29, 2014, approximately forty-four days after the Debtor filed her petition.  Therefore, the first question presented is what effect does the expiration of the statutory period during the Debtor's bankruptcy have on the Exemption.

The United States Court of Appeals for the First Circuit has stated that "it is a basic principle of bankruptcy law that exemptions are determined when a petition is filed."[31]  This

---

[28] Mass. Gen. Laws ch. 188, § 1.

[29] *Id.*

[30] Mass. Gen. Laws ch. 188, § 11(a)(1) (emphasis added).

[31] *In re Cunningham*, 513 F.3d at 324.

focus on the facts and law as they exist on the petition date is commonly referred to as the "snapshot" approach (or rule) and often adopts the vernacular that exemptions become "fixed" on that date.[32]   Indeed, the Debtor's primary argument is that the Exemption became fixed, that is *frozen*, on the petition date and the expiration of the one year period under Mass. Gen. Laws ch. 188, § 11(a)(1) is of no effect.

While this is an issue of first impression in both Massachusetts and the First Circuit, published decisions reflect that other courts have analyzed such "vanishing exemptions" under Illinois, Texas, California, Arizona, and Oregon law in the bankruptcy context and, to be sure, there is authority to support the Debtor's position.   Two bankruptcy courts have upheld a debtor's claim of exemption of prepetition sale proceeds notwithstanding the post-petition expiration of the exemption period under the applicable Illinois statute.[33]   Both concluded that "[d]evelopments which occur after filing should not impact on the entitlement to an exemption properly claimed at filing,"[34] and lamented the negative impact on "the speed, certainty and finality of the administration of cases" if trustees could wait for an exemption to expire.[35] Relying on a snapshot rule, the bankruptcy court in *In re Lantz* reasoned that "[t]he Code does not modify the exemption," but instead "simply determines the rights of pre-petition creditors to collect from the debtor's assets, and makes that determination as of the petition date," which

---

[32] *In re Zibman*, 268 F.3d at 302.

[33] *In re Lantz*, 446 B.R. 850, 861 (Bankr. N.D. Ill. 2011); *In re Snowden*, 386 B.R. 730, 734 (Bankr. C.D. Ill. 2008); *see also In re Hageman*, 388 B.R. 896, 900 (Bankr. C.D. Ill. 2008) ("A debtor is not required to maintain exempt property in its exempt state indefinitely after filing in order to avoid a retroactive loss of the exemption.").

[34] *In re Snowden*, 386 B.R. at 734.  *See In re Lantz*, 446 B.R. at 858.

[35] *In re Lantz*, 446 B.R. at 860.  *See In re Snowden*, 386 B.R. at 734.

yields a result that "is no different than the effect of the discharge or numerous other key provisions in the Bankruptcy Code."[36]

*In re Lantz* and its predecessor, *In re Snowden*, however, appear to represent a minority view with respect to vanishing exemptions and have been criticized at length by another bankruptcy judge within Illinois.[37]   Notably, the United States Courts of Appeal for the Fifth and Ninth Circuits have both held sale proceeds not reinvested within the applicable statutory periods under Texas and California law, respectively, subsequently lost their exempt status post-petition.[38]   The Ninth Circuit's analysis has since been applied to analogous exemption statutes in Arizona and Oregon.[39]

The rationale of these cases is that state law exemptions must be analyzed "in terms of the *exact scope of the rights* [the statute] confers at the time of the bankruptcy petition,"[40] which is consistent with the Supreme Court of the United States' recent admonition in *Law v. Siegel* that "when a debtor claims a *state-created* exemption, the exemption's scope is determined by

---

[36] *In re Lantz*, 446 B.R. at 859.

[37] *See In re Stewart*, 452 B.R. 726, 738-742 (Bankr. C.D. Ill. 2011).

[38] *In re Frost*, 744 F.3d at 388; *In re Jacobson*, 676 F.3d at 1199; *Studensky v. Morgan (In re Morgan)*, 481 F. App'x 183, 187 (5th Cir. 2012); *In re Zibman*, 268 F.3d at 304; *England v. Golden (In re Golden)*, 789 F.2d 698, 700 (9th Cir. 1986).

[39]  *In re White*, 389 B.R. at 702 (applying Arizona law); *Ford v. Konnoff (In re Konnoff)*, 356 B.R. 201, 208 (B.A.P. 9th Cir. 2006) (applying Arizona law); *Gaughan v. Smith (In re Smith)*, 342 B.R. 801, 806 (B.A.P. 9th Cir. 2006) (applying Arizona law); *In re Foreacre*, 358 B.R. 384, 392 (Bankr. D. Ariz. 2006) (applying Arizona law); *In re VanSickle*, 350 B.R. 897, 900 (Bankr. D. Idaho 2006) (applying Oregon law).  I note, however, that individual judges of the United States Bankruptcy Appellate Panel for the Ninth Circuit have concurred that *In re Golden* mandates such a result, but have urged that the Ninth Circuit should reconsider.  *See In re Konnoff*, 356 B.R. at 209–10  (Pappas concurring); *In re Smith*, 342 B.R. at 809 (Klein concurring).

[40] *In re Jacobson*, 676 F.3d at 1199 (emphasis added).

state law . . . ."[41]   Relying on the Supreme Court's decision in *Myers v. Matley*,[42] the Fifth

Circuit in *In re Zibman* explained that

> *Myers* thus confirms the basic holding from *White v. Stump* [266 U.S. 310, 45
> S.Ct. 103, 69 L.Ed. 301 (1924)] that the law and facts existing on the date of
> filing the bankruptcy petition determine the existence of available exemptions, but
> flags the important reminder that it is the *entire* state law applicable on the filing
> date that is determinative. Courts cannot apply a juridical airbrush to excise
> offending images necessarily pictured in the petition-date snapshot.[43]

The Fifth Circuit reversed the bankruptcy court's and the district court's application of a

snapshot rule, concluding that neither court below applied the "*entire* Texas law . . . applicable"

and that

> "freezing" the exemption for the proceeds simply because it was in effect at the
> date the petition was filed, effectively read the 6-month limitation out of the
> statute, and transformed an explicitly limited exemption into a permanent one.[44]

In sum, these courts reason that if state law only provides a limited exemption, the limitations

which are "inextricably intertwined with the exemption" must be respected.[45]

   In contrast, the Debtor urges that a different result is mandated pursuant to well-

established circuit precedent.   Indeed, she argues that the First Circuit's decision in *In re*

*Cunningham* controls the outcome of this matter and is incompatible with the "entire law"

approach adopted by the Fifth and Ninth Circuits.   In *In re Cunningham*, a creditor holding a

non-dischargeable debt sought to obtain the proceeds of the post-petition sale of the debtor's

residence, asserting that under the statute then in effect, the debtor's properly claimed homestead

---

[41] *Law v. Siegel*, 134 S. Ct. 1188, 1196-97, 188 L. Ed. 2d 146 (2014) (emphasis in original).

[42] *Myers v. Matley*, 318 U.S. 622, 63 S.Ct. 780, 87 L. Ed. 1043 (1943).

[43] *In re Zibman*, 268 F.3d at 304 (emphasis added).

[44] *Id.* (emphasis in original).

[45] *Id.*

exemption had terminated upon the sale of the property.[46]  The bankruptcy court, district court, and First Circuit all rejected the creditor's position, agreeing that once exempt property is withdrawn from the estate, 11 U.S.C. § 522(c) permanently immunizes it from prepetition debt.[47] Citing the snapshot rule as "a basic principle of bankruptcy law," the First Circuit further reasoned that "interpret[ing] [11 U.S.C.] § 522(c) as conferring merely an ephemeral exemption, subject to post-termination events, would undermine that basic principle and its relationship to the fresh start policy of the Bankruptcy Code."[48]

Certainly, *In re Cunningham* is binding precedent in this circuit and expressly held that the immunizing effect of 11 U.S.C. § 522(c) is not "subject to post-termination events."[49] Nevertheless, I do not agree that it controls the outcome of this case for a number of reasons. Moreover, I conclude that the First Circuit's holding in *In re Cunningham* is not inconsistent with the "entire law" approach articulated by the Fifth Circuit in *In re Zibman*.

From the outset, it must be remembered that *In re Cunningham* involved the prior version of the Massachusetts Homestead Statute which did not provide an exemption for sale proceeds, so the possibility of an expiring exemption was not considered.  More importantly, however, the exemption provided by the statute in that case was, in a sense, absolute.[50]  Indeed, under the old statute, once an estate of homestead was acquired, it could only be terminated one of three ways: (1) a deed conveying the property in which an estate of homestead exists without a specific reservation of the homestead; (2) a signed, sealed, and acknowledged release of the homestead

---

[46] *In re Cunningham*, 513 F.3d at 321.

[47] *Id.* at 322-324.

[48] *Id.* at 324.

[49] *Id.*

[50] As will become more apparent below, I intentionally avoid the word "unlimited."

recorded in the appropriate registry; or (3) the acquisition of a new estate of homestead which automatically discharged the previous estate.[51]  In comparison, the protection afforded to sale proceeds under the newly enacted Mass. Gen. Laws ch. 188, § 11 is inherently limited—if the Debtor fails to reinvest the sale proceeds in a new homestead, the exemption will expire by operation of law one year after the sale.  Accordingly, the exemption claimed by the Debtor here is fundamentally different than that in *In re Cunningham*.

The inherent limitation of Mass. Gen. Laws ch. 188, § 11 also suggests that a "termination" is distinguishable from an "expiration" in this context.  Putting bankruptcy aside for a moment, the Massachusetts Homestead Statute, both in its current and prior versions, define termination as arising from affirmative acts by the owner.[52]  In contrast, Mass. Gen. Laws ch. 188, § 11 requires an affirmative act to maintain the exempt status of the sale proceeds of a homestead, namely, reinvestment in a new homestead.  Moreover, the expiration of the one year period described in Mass. Gen. Laws ch. 188, § 11 is not one of the termination methods listed in Mass. Gen. Laws ch. 188, § 10.[53]  This is notable because the Massachusetts Legislature otherwise provided overlapping cross references by stating that "proceeds . . shall be entitled to protection of this chapter . . ." in Mass. Gen. Laws ch. 188, § 11, and then defining a "home," which is inherently subject to protections described in Chapter 188, as "sale proceeds as provided in . . .  section 11."[54]  Therefore, returning to the bankruptcy context, I find that the

---

[51] *See In re Gunnison*, 397 B.R. 186, 189 (Bankr. D. Mass. 2008).  Although I articulated an applicable legal standard for  termination of an estate of homestead by abandonment in *In re Marrama*, 307 B.R. 332, 338-339 (Bankr. D. Mass. 2004), the concept of which was subject to dispute in this district, *see In re Webber*, 278 B.R. 294, 297–98 (Bankr. D. Mass. 2002) and *In re Taylor*, 280 B.R. 294, 297 (Bankr. D. Mass. 2002), the requisite inquiry focused on the debtor's intent with respect to the property prior to filing the petition and claiming an exemption.

[52] *See* Mass. Gen. Laws ch. 188, § 10 (2014); Mass. Gen. Laws ch. 188, § 7 (2010).

[53] *See* Mass. Gen. Laws ch. 188, § 10.

[54] Mass. Gen. Laws ch. 188, §§ 1, 11.

First Circuit's pronouncement that 11 U.S.C. § 522(c) renders exemptions not "subject to post-termination events" inapposite to the issue of the expiration the exemption period under Mass. Gen. Laws ch. 188, § 11.[55]

Lastly, the timing of the sale and the statutory basis of the exemption claimed are, in my opinion, dispositive factors. Viewing the petition date "snapshot" from *In re Cunningham*, the debtor held real property and that is what his claimed exemption protected. The First Circuit held that once that exemption fixed, the immunizing effect of 11 U.S.C. § 522(c) essentially maintained the integrity of the claimed exemption despite a post-petition terminating event under a different section of the Massachusetts Homestead Statute. Here, however, the exemption that fixed to the Proceeds Share was innately limited in duration. The integrity of the exemption claimed on the petition date remains uncompromised, but simply by its own terms no longer applies to the Proceeds Share. Ironically, suggesting the one year period was frozen by the fixing of the exemption modifies, rather than protects, the exemption. Accordingly, I find that the statutorily defined parameters of the exemption that fixes on the petition date controls and, as such, *In re Cunningham* does not extend to cases where the sale of the homestead occurred prepetition.[56]

---

[55] *In re Cunningham*, 513 F.3d at 324.

[56] For the sake of completeness, I note that both the Ninth and Fifth Circuits have held that the protection afforded to sale proceeds under the California and Texas statutes, respectively, can expire notwithstanding the post-petition conversion of the exempt asset into cash proceeds, a result seemingly at odds with *In re Cunningham*. *See In re Jacobson*, 676 F.3d at 1199-1200; *In re Frost*, 744 F.3d at 388. The Fifth Circuit expressly distinguished *In re Cunningham* on the basis that the Texas statute exempts an "interest in *real* property without a monetary limit." *In re Frost*, 744 F.3d at 389. While the idiosyncrasies of the California and Texas exemption statutes may dictate a different result, I need only concern myself with the facts before me and not the lengths to which other courts have extended the same authority.

Additionally, the Debtor relies on *In re Weinstein* for the proposition that Massachusetts' exceptions to its homestead exemption are preempted by the Bankruptcy Code.[57]    In *In re Weinstein*, the First Circuit held that the Massachusetts Homestead Statute's pre-existing debt exception conflicted with 11 U.S.C. § 522(c) because it was not among the excepted types of prepetition debt listed in that section and was therefore preempted.   Reaching this conclusion, the First Circuit explained:

> Patriot asserts that the "property exempted" for purposes of section 522(c) must be defined by Massachusetts law, including all of its built-in limitations. Under this view, the exceptions to the homestead statute operate to define the value of the estate, which is the "property exempted," and therefore there is no conflict between § 522(c) and section 1(2). . . .

> * * *

> Congress has plenary power to enact uniform federal bankruptcy laws. *See* U.S. Const. art. 1, § 8, cl. 4; *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929). Consequently, "[s]tates may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations." *International Shoe Co.*, 278 U.S. at 265, 49 S.Ct. at 110 (noting that the intent of Congress in establishing uniform bankruptcy laws necessarily excludes inconsistent state regulation).   We recognize that Congress afforded significant deference to state law by allowing bankruptcy debtors to choose state exemptions and by further allowing states to opt out of the federal exemption scheme entirely. *See In re Boucher*, 203 B.R. [10,] at 12 [(Bankr. D. Mass. 1996)] (citing 11 U.S.C. § 522(b)). Yet, such deference does not warrant the conclusion that the "property exempted" in section 522(c) must be defined by first applying all the built-in exceptions to the state exemption statute. As the Supreme Court recognized in discussing the interplay between § 522(f) and state exemption exceptions in *Owen*, the state's ability to define its exemptions is not absolute and must yield to conflicting policies in the Bankruptcy Code.[58]

At first glance, the First Circuit's apparent rejection of the creditor's argument that a state exemption must be defined by reference to its "built-in limitations" would seem to support the

---

[57] *In re Weinstein*, 164 F.3d at 682.

[58] *Id.* at 682-683.

Debtor's argument.  To put that statement in proper context, however, a brief discussion of the Supreme Court's decision in *Owen v. Owen*, which was heavily relied upon in *In re Weinstein*, is appropriate.

In *Owen v. Owen*, the Supreme Court held that a debtor could avoid a pre-existing judicial lien encumbering exempt property pursuant to 11 U.S.C. § 522(f) even though the state statute had defined the exemption to specifically exclude property to which liens that attached before the property acquired its homestead status.[59]  The Supreme Court began its analysis by stating that "[n]othing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all."[60] It then framed the issue as follows:

> The question presented by this case is whether [a judicial lien] "impairs an exemption to which [petitioner] would have been entitled under subsection (b)." Since Florida has chosen to opt out of the listed federal exemptions . . . , the only subsection (b) exemption at issue is the Florida homestead exemption described above. Respondent suggests that, to resolve this case, we need only ask whether the judicial lien impairs that exemption. It obviously does not, since the Florida homestead exemption is not assertable against pre-existing judicial liens. To permit avoidance of the lien, respondent urges, would not *preserve* the exemption but would *expand* it.
>
> At first blush, this seems entirely reasonable.  Several Courts of Appeals in addition to the Eleventh Circuit here have reached this result with respect to built-in limitations on state exemptions, though others have rejected it.  What must give us pause, however, is that this result has been widely and *uniformly* rejected with respect to built-in limitations on the *federal* exemptions.[61]

Noting that 11 U.S.C. § 522(f) starts with the phrase "[n]otwithstanding any waiver of exemptions" and refers to impairing "an exemption to which the debtor would have been

---

[59] *Id.* at 306-307.

[60] *Id.* at 308.

[61] *Id.* at 309-310 (footnotes omitted) (emphasis in original).

entitled,"[62] the Supreme Court determined, as unanimously applied by the lower courts with respect to federal exemptions, that "would have been entitled" means "but for the lien at issue."[63] The Supreme Court continued:

> The question then becomes whether a different interpretation should be adopted for state exemptions. We do not see how that could be possible. Nothing in the text of § 522(f) remotely justifies treating the two categories of exemptions differently. The provision refers to the impairment of "exemption[s] to which the debtor would have been entitled under subsection (b)," and that includes federal exemptions and state exemptions alike. Nor is there any overwhelmingly clear policy impelling us, if we possessed the power, to create a distinction that the words of the statute do not contain. Respondent asserts that it is inconsistent with the Bankruptcy Code's "opt-out" policy, whereby the States may define their own exemptions, to refuse to take those exemptions with all their built-in limitations. That is plainly not true, however, since there is no doubt that a state exemption which purports to be available "unless waived" will be given full effect, *even if it has been waived*, for purposes of § 522(f)-the first phrase of which, as we have noted, recites that it applies "[n]otwithstanding any waiver of exemptions." *See Dominion Bank of Cumberlands, NA v. Nuckolls*, 780 F.2d 408, 412 (CA4 1985). Just as it is not inconsistent with the policy of permitting state-defined exemptions to have another policy disfavoring waiver of exemptions, whether federal- or state-created; so also it is not inconsistent to have a policy disfavoring the impingement of certain types of liens upon exemptions, whether federal- or state-created. We have no basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains.[64]

*Owen v. Owen* is often cited for the principle that the "the state's ability to define its exemptions is not absolute"[65] and that "the state's exemptions do not necessarily include all of their 'built-in limitations,'"[66] notwithstanding the fact the Court simultaneously acknowledged that "[n]othing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the

---

[62] 11 U.S.C. § 522(f).

[63] *Owen v. Owen*, 500 U.S. at 311.

[64] *Id.* at 313.

[65] *In re Weinstein*, 164 F.3d at 683.

[66] *In re Konnoff*, 356 B.R. at 206.

scope of its exemptions; indeed, it could theoretically accord no exemptions at all."[67] Recognizing this disjoint, the United States Bankruptcy Appellate Panel for the Ninth Circuit in *In re Konnoff*, found the Supreme Court's repeated reference to "built-in limitations" ambiguous.[68]   Nevertheless, the Panel concluded that, stripped to its core, *Owen*'s lesson is that "states do not have a carte blanche to place unlimited restrictions on exemptions; if the exemptions directly conflict with the Code, then the Code prevails."[69]   Having reviewed *Owen v. Owen* carefully and with an eye towards First Circuit precedent, I concur that this reading gives meaning to both statements, is consistent with the case's holding, and is harmonious with the Supreme Court's fundamental directive that "when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law . . . ."[70]

Now, with the understanding that *Owen v. Owen* concerned preemption, I do not read *In re Weinstein* to unequivocally reject all "built-in limitations" to a state's exemption statute. Indeed, a state may very well provide and define an exemption with an inherent limitation so long as it does not conflict with the Bankruptcy Code and its policies.   In the absence of an actual conflict, a court would be hard pressed to justify not deferring to the state defined scope of an exemption with all its limitations.

Returning to the case at bar, I find no *express* conflict between Mass. Gen. Laws ch. 188, § 11 and 11 U.S.C. § 522(c).   To be crystal clear, 11 U.S.C. § 522(c) provides:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined

---

[67] *Owen v. Owen*, 500 U.S. at 308.

[68] *In re Konnoff*, 356 B.R. at 206.

[69] *Id.* at 206-207.

[70] *Law v. Siegel*, 134 S. Ct. at 1196-97 (emphasis in original).

under section 502 of this title as if such debt had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);

(2) a debt secured by a lien that is—

(A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed;

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) of this title owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or

(4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount, award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).[71]

As previously stated, this section generally immunizes "property exempted" against all prepetition debts. Unlike a pre-existing debt exception, however, the one year period under Mass. Gen. Laws ch. 188, § 11(a)(1) does not seek to hold *exempt* property liable during or after the case for a prepetition debt. To the contrary, the property in question simply ceases to be exempt after the one year period. In this way, the one year period is not an exception at all because an exception is by definition "an instance or case that does not conform to the general

---

[71] 11 U.S.C. § 522(c).

rule."[72]  Here, there is no general rule that sale proceeds are exempt—the exemption is expressly

defined by the temporal limitation.

One might fairly say these observations simply beg the question of whether property

"exempted under this section" can cease to be "exempted under this section" by virtue of a state

exemption statute's innate temporal limitation in existence on the petition date.[73]  Ultimately, the

arguments in favor of either result seemingly devolve into circularity.  Courts inclined to permit

a temporal limitation find no conflict between a state exemption statute and the Bankruptcy Code

because 11 U.S.C. § 522(c) only applies to "exempted" property, which according to the state's

definition of the exemption in effect on the petition date, the property will eventually cease to be

by operation of law.  On the other hand, courts that find a conflict arising from temporal

limitations construe 11 U.S.C. §§ 522(b)(1), (3), and (c) to mean that property claimed exempt

pursuant to a an exemption available on the petition date is "exempted under this section," and

forever removed from the estate.  Admittedly, an exemption is generally understood as "an

interest withdrawn from the estate," but does that necessarily mean that an interest can never, for

any reason, return to the estate?[74]  In *In re Cunningham*, the First Circuit described 11 U.S.C. §

522(c) as "*permanently* immunizing the homestead from pre-bankruptcy debt," but, again, the

First Circuit did not consider a vanishing exemption in that case so I do not read that language to

necessarily preclude that possibility.[75]

---

[72] Exception Definition, Dictionary.com, http://dictionary.reference.com/browse/exception?s=t (last visited July 31, 2014).

[73] 11 U.S.C. § 522(c).

[74] *Owen v. Owen*, 500 U.S. 308.

[75] *In re Cunningham*, 513 F.3d at 323 (emphasis added).

Analysis of the relevant sections of the Bankruptcy Code and case law do not yield a clear definitive answer.  To the contrary, I find 11 U.S.C. §§ 522(b)(1), (3), and (c) susceptible of either interpretation.  In fact, I would venture so far as to say vanishing exemptions are such a rare and unique facet of state law that I doubt the drafters of the Bankruptcy Code ever considered a fact pattern like the one presented by this case.  Regardless, though it is a close call, I find the "entire law" approach adopted by the Fifth and Ninth Circuits the better interpretation.

As recognized by the First Circuit in *In re Weinstein*, "Congress afforded significant deference to state law by allowing bankruptcy debtors to choose state exemptions and by further allowing states to opt out of the federal exemption scheme entirely."[76]  Indeed, "[n]othing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions."[77]  Moreover, the Supreme Court has emphatically stated that "a [state-created] exemption's scope is determined by state law."[78]  These considerations necessarily favor consideration of the exemption within its state defined temporal limitation.  *Owen v. Owen*, of course, tempers the general rule by holding that a bankruptcy court need not "take those [state law] exemptions with all their built-in limitations" where such limitations conflict with the Bankruptcy Code.[79]  I find no express conflict between Mass. Gen. Laws ch. 188, § 11(a) and the Bankruptcy Code, and conclude that any ambiguity should be resolved with deference to state law.  Therefore, a state law exemption defined by an innate temporal limitation shall expire pursuant to that limitation notwithstanding an intervening bankruptcy.

---

[76] *In re Weinstein*, 164 F.3d at 683.

[77] *Owen v. Owen*, 500 U.S. at 308.

[78] *Law v. Siegel*, 134 S. Ct. at 1196-97.

[79] *Owen v. Owen*, 500 U.S. at 313.

Having determined that the Bankruptcy Code does not prevent the one year period contained in Mass. Gen. Laws ch. 188, § 11(a) from expiring post-petition by operation of law, I must now determine whether, as the Debtor contends, Mass. Gen. Laws ch. 188, § 6 preserves the homestead while the divorce remains pending in the Probate Court.  That section provides in relevant part:

> In a case where a complaint for divorce . . . has been filed in the probate court by or against a person entitled to the benefit of an estate of homestead, the spouse and minor children of that person may use, occupy and enjoy the homestead estate until ordered otherwise by the probate court. . . .[80]

Applying the statutory text to the facts at hand, both Mark and the Debtor were "person[s] entitled to the benefit of an estate of homestead" at the commencement of the divorce proceeding.  Regardless of who filed the complaint, they are also both "spouses" as defined in that section, implying that they each "may use, occupy and enjoy the homestead estate until ordered otherwise by the probate court."[81]  Although the Property has been sold, an "estate of homestead" still exists in a "home," which is defined to include "the sale proceeds as provided in clause (1) of subsection (a) of section 11." [82]  Accordingly, the Debtor and the Proceeds Share appear to fall squarely within the text of this section.

Without question, the phrasing of Mass. Gen. Laws ch. 188, § 6 is awkward, placing emphasis on the homestead rights of the "spouse" of the "person entitled to the benefit of a homestead" when such person is a party to a divorce proceeding in the probate court.[83]  This suggests that the Massachusetts Legislature's primary concern was to protect the rights of a non-

---

[80] Mass. Gen. Laws ch. 188, § 6.

[81] *Id.*

[82] Mass. Gen. Laws ch. 188, § 1, 3, 4.

[83] *Id.*

title holding spouse (and any minor children) whose homestead rights are derivative of the title holding spouse. Nevertheless, given that it "is firmly established that the Massachusetts homestead statute should be construed liberally in favor of the party or parties benefitting from the homestead," I predict that the Massachusetts Supreme Judicial Court would find the broad language operates to maintain the status quo with respect to the homestead until the Probate Court is able to sort out the parties' respective rights.[84]

Furthermore, I agree with the Debtor and predict that the Supreme Judicial Court would hold that Mass. Gen. Laws ch. 188, § 11(a) is necessarily subject to Mass. Gen. Laws ch. 188, § 6 such that sale proceeds remain exempt until the Probate Court orders otherwise, notwithstanding the expiration of the one year period.[85]  As practical matter, this makes sense because in the absence of a judgment, the parties' property rights are not yet established.  Indeed, while the Debtor and Mark tentatively agreed to split the sale proceeds evenly, no settlement has been reached, so Mark could conceivably receive more than half of the sale proceeds.  Once the Probate Court rules, however, the protection afforded to the Share Proceeds under Mass. Gen. Laws ch. 188, § 6 will expire pursuant to the terms of that order and the period under Mass. Gen. Laws ch. 188, § 11(a) having already expired, the Share Proceeds will cease to be exempt.  Therefore, I will continue the Objection generally.

---

[84] *Dwyer v. Cempellin,* 424 Mass. at 30.

[85] The "orders otherwise" language in Mass. Gen. Laws ch. 188, § 6 indicates the Probate Court has wide latitude to either terminate the homestead prior to entry of a final judgment or extend it for some period of time after entry of a final judgment.

## V. **CONCLUSION**

In light of the foregoing, I will enter an order continuing the Objection generally.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: August 6, 2014

Counsel Appearing:

Alex F. Mattera, Demeo, LLP, Boston, MA,
for the Trustee
Peter M. Daigle, Law Office of Peter M. Daigle, P.C., Centerville, MA,
for the Debtor